IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IMPLUS FOOTCARE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:15-cv-00659 |
| ) | |
| MAVERICK SPORTS MEDICINE, INC. ) | |
| d/b/a PRO-TEC ATHLETICS ) | |
| ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

Plaintiff Implus Footcare, LLC ("Implus"), complaining of the actions of Maverick Sports Medicine, Inc. d/b/a Pro-Tec Athletics ("Pro-Tec"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement and unfair or deceptive acts or practices. Plaintiff Implus brings this suit to protect and enforce its rights under United States Patent No. 9,005,146 (the "'146 Patent" or the "patent-in-suit") against defendant Pro-Tec, which has willfully infringed and is infringing upon those rights by manufacturing and/or selling at least one product, the "Contoured Roller," that incorporates one or more of the claims in that Patent (the "Infringing Product"). By this action, Implus seeks to permanently enjoin Pro-Tec's further sale of the Infringing Product, and to recover compensatory damages, treble damages and attorneys' fees for Pro-Tec's prior infringement pursuant to 35 U.S.C. §§ 271, 281, 283-285, and N.C.G.S. §75-1.1 *et seq.*

## PARTIES

2. Implus is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in North Carolina.

1

3. On information and belief, Pro-Tec is incorporated under the laws of the State of Washington, having a principal place of business in Redmond, Washington.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, 35 U.S.C. §§ 271, 281, 283-285.

5. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1331, 1338(a), and 1338(b).

6. This Court has personal jurisdiction over Pro-Tec consistent with the Due Process Clause of the federal Constitution and the North Carolina Long Arm Statute because Pro-Tec continuously, systematically, and purposefully conducts business within this District, such that Pro-Tec should reasonably anticipate being haled into court in this jurisdiction, and because Implus's causes of action arise directly from Pro-Tec's business contacts and other activities in the State of North Carolina and in this District.

7. Pro-Tec, directly and/or through authorized intermediaries, ships, distributes, offers for sale, sells, and/or advertises products and services in the United States, the State of North Carolina, and the Eastern District of North Carolina including but not limited to the Infringing Product as detailed below. Pro-Tec solicits customers in the State of North Carolina and in the Eastern District of North Carolina. Pro-Tec has paying customers who are residents of the State of North Carolina and of this District, and who use Pro-Tec's products and services in this State and this District.

8. Venue in this District is proper under 28 U.S.C. §1391 and 28 U.S.C. § 1400(b). Pro-Tec has transacted business in this district and has committed acts of patent infringement in this district, by making, using, or selling the Infringing Product within this District.

# FACTS

9. Plaintiff Implus is the owner of all right, title, and interest in and to the '146 Patent.

10. The '146 Patent, titled "MASSAGE ROLLER," and was filed on January 13, 2010, by Implus's corporate predecessor in interest, Trigger Point Technologies, LLC ("Trigger Point"). The patent was duly issued by the United States Patent and Trademark Office on April 14, 2015. A true and correct copy of the '146 Patent is attached hereto as Exhibit A.

11. The '146 Patent covers a hollow core massage roller that effectively addresses tender and painful conditions, such as muscle or connective tissue conditions, and which can be used as a core workout or strengthening apparatus.

12. The '146 Patent claims, *inter alia*, a single cylindrical hollow roller core, a roller body (*i.e.*, a foam layer) provided on this core, and a plurality of curvilinear massage zones, in which the sum of the thicknesses (measured radially) of the core and the roller body is less than the inner radius of the core, and the length of the core (measured axially) is greater than the diameter of the massage roller (measured to the outside surface of the roller).

13. As described in the Abstract to the '146 Patent, the Patent covers a massage roller including a generally resilient roller body and a plurality of massage zones allowing for various densities provided on the roller body.

14. The '146 Patent is currently in full force and effect and, in accordance with 35 U.S.C. § 282, that Patent and all claims therein are presumed to be valid.

15. Implus acquired Trigger Point in a stock transaction in 2014, and thereby assumed all of Trigger Point's rights of recovery under the '146 Patent, including the exclusive

right to sue for infringement and recover past damages.  Implus is also an express assignee of the '146 Patent.

16. Over the past five years, Implus and Trigger Point have commercialized the invention set forth in the '146 Patent by marketing four different massage rollers under the Trigger Point Performance Therapy® GRID® brand.  Each of these products utilize that patented technology to set out in the '146 Patent to create Distrodensity® zones, in which massaging zones of different depths and surface widths replicate the feeling of massage.

17. The contoured, three-dimensional surface of the GRID Rollers, which feature areas of foam allowing for varying levels of firmness, allows for tissues to aerate when rolling, which in turn promotes the flow of blood and oxygen for muscle repair.  Consumers use these GRID Roller products to relieve muscle and joint pain and improve flexibility and range of motion, either during an athletic workout or as part of a pre- or post-workout routine.  True and accurate depictions of the four current GRID Roller products (the GRID, GRID X, GRID 2.0, and GRID Mini), are attached hereto as Exhibit B.

18. Implus and its corporate predecessor Trigger Point have manufactured and sold over one million GRID Rollers incorporating and embodying the claims of the '146 Patent.  In 2014 alone, they expended over $1 million in advertising and marketing efforts in support of these products.

19. For over five years, Implus and Trigger Point have clearly labeled the GRID Roller products as patent pending, putting all would-be competitors on notice of their pending claim to the exclusive use of the technology reflected in those products.

20. In March, 2012, Trigger Point published the pending patent, further putting the marketplace and its competitors on notice of the proprietary technology incorporated in the GRID Rollers and its inventor's intent to defend its intellectual property rights.

21. On April 28, 2015, shortly after the '146 Patent was issued, Implus published a press release announcing the issuance of that Patent and further publicly declaring its intent to enforce the rights granted thereunder against competitors infringing upon those rights. This press release was picked up and reprinted widely in the sporting goods trade press.

22. As a result of this announcement, one manufacturer of an infringing massage roller product voluntarily contacted Implus to negotiate a change in the design of its product so as to avoid continued infringement.

23. In contrast, Pro-Tec has systematically and willfully ignored both the "Patent Pending" notices on the GRID Roller products, the publication of the pending patent, and the public notice of the issuance of the '146 Patent to continue to manufacture and sell the Infringing Product, a true and accurate depiction of which is attached hereto as Exhibit C.

24. On or about June 9, 2015, Implus served Pro-Tec with a cease and desist letter setting forth in detail Implus's intellectual property rights in the '146 Patent and Pro-Tec's infringing conduct, a true and accurate copy of which is attached hereto as Exhibit D. In the letter, Implus demanded a response from Pro-Tec no later than June 23, 2015.

25. Despite repeated demands thereafter, Pro-Tec has failed and refused to stop selling the Infringing Product.

26. Pro-Tec has had actual knowledge of the '146 Patent since at least the date of service of the June 9, 2015 Cease and Desist letter.

27. Pro-Tec continues to willfully and knowingly violate those rights by manufacturing and selling the Infringing Product in this District and throughout the United States through various online and in-store retailers, including but not limited to Pro-tecathletics.com, Amazon.com, Dick's Sporting Goods, and Academy Sports and Outdoors.

28. Pro-Tec's infringement upon the '146 Patent has been and now clearly is neither innocent and unintentional, but willful and malicious. Pro-Tec is a direct competitor of Implus in the sports massage foam roller market, and as such is well aware of the GRID Roller products and their distinctive features.

29. Pro-Tec's willful and deliberate infringement of the '146 Patent entitles Implus to enhanced damages and reasonable attorney fees and costs.

30. As a direct and proximate cause of the infringement by Pro-Tec, and unless Pro-Tec is enjoined by the Court from manufacturing, importing, offering to sell, selling, or using within the United States products covered by the claims of the patent-in-suit, Implus is being and will continue to be substantially and irreparably harmed in its business and property rights.

## COUNT ONE
### (For Patent Infringement, Patent No. 9,005,146)

31. Implus realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

32. Implus is the sole owner of the entire right, title and interest in and to the '146 Patent, including the right to sue and recover for any and all infringement thereof.

33. Pro-Tec has been and is now directly and/or indirectly infringing one or more claims of the '146 Patent by making, using, selling, offering for sale and/or importing products including but not limited to the Infringing Product depicted in Exhibit C.

6

34. As exemplified by this depiction, the Infringing Product possesses, *inter alia*, a single cylindrical hollow roller core, a roller body (*i.e.,* a foam layer) provided on this core, and a plurality of curvilinear massage zones. Moreover, upon information, belief, and investigation, in the Infringing Product, the sum of the thicknesses (measured radially) of the core and the roller body is less than the inner radius of the core, and the length of the core (measured axially) is greater than the diameter of the massage roller (measured to the outside surface of the roller). Thus, the Infringing Product infringe upon at least claim 1 of the '146 Patent.

35. Pro-Tec has marketed and/or sold the Infringing Product throughout the United States, including within this District.

36. Upon information and belief, Pro-Tec's actions have at all times been knowing, intentional, willful and malicious. Pro-Tec's willful and knowing violation of Implus's rights under the '146 Patent renders this an exceptional case under 35 U.S.C. § 285.

37. Pro-Tec has and continues to unlawfully derive income, profits, and goodwill from its infringing activities, which also serve to unlawfully divert sales and profits away from Implus.

38. Implus has been and will continue to be irreparably damaged through the ongoing infringement of the '146 Patent caused by Pro-Tec's marketing and sale of the Infringing Product. Implus has no adequate remedy at law for this damage. The damage to Implus includes harm to its market position, goodwill, and customer base that cannot be adequately measured in, or compensated by, money damages.

## COUNT II
**(For Unfair Or Deceptive Trade Practices, N.C.G.S. § 75.1-1, *et seq.*)**

39. Implus realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

40. Pro-Tec's conduct as alleged herein violates the North Carolina Unfair or Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et. seq.*

41. By copying the proprietary and commercially valuable characteristics of the GRID Roller products and incorporating those features and characteristics into the Infringing Product without regard to Implus's rights thereto, Pro-Tec has engaged in unfair competition and unfair or deceptive acts or practices in and substantially affecting commerce, both within and outside the State of North Carolina. Among other injuries, Pro-Tec's conduct has caused Implus, which is headquartered within and employs several hundred citizens of this State, to lose substantial sales to customers both within and outside of North Carolina, together with the attendant loss of revenues and profits, as well as loss of market share and injury to its goodwill and reputation as an innovator of sporting goods products.

42. Pro-Tec's conduct violates industry standards, offends public policy as established by, among other things, the federal patent law and North Carolina law, and is unethical and unscrupulous.

43. Pro-Tec's unfair competition and unfair and deceptive acts have directly and proximately caused injury to Implus through the unlawful diversion of sales and profits away from the patented GRID Roller products and to Pro-Tec through its manufacture and sale of the Infringing Product.

44. In addition to these monetary damages, Implus has been and will continue to be irreparably damaged by Pro-Tec's unfair and deceptive acts and unfair competition in ways for which there is no adequate remedy at law. This irreparable harm includes harm to its market position, goodwill, and customer base that cannot be adequately measured in, or compensated by, money damages.

45. Pro-Tec's unfair and deceptive practices and methods of competition are not, upon information or belief, the product of accident or mistake, but were and are deliberate, knowing, and willful, and done with the malicious intent to harm Implus and reap undeserved profits by diverting consumers from the GRID Roller products to the Infringing Product.

## PRAYER FOR RELIEF

WHEREFORE, Implus respectfully prays the Court:

a. For a judgment in favor of Implus that Pro-Tec has infringed, directly, jointly, and/or indirectly by way of inducing and/or contributing to the infringement of the '146 Patent;

b. For a permanent injunction enjoining Pro-Tec and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith, from the further infringement, inducing the further infringement of, or contributing to the further infringement of the '146 Patent;

c. For a judgment and order requiring Pro-Tec to pay Implus its damages, costs, and expenses arising from Pro-Tec's infringement of the '146 Patent as provided under 35 U.S.C. § 284, together with pre- and post-judgment interest thereon at the maximum legal rate;

d. For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, and an award to Implus of its reasonable attorneys' fees;

e. For a judgment and order finding that Pro-Tec's actions constitute unfair competition and unfair and deceptive acts or practices in violation of

N.C.G.S. 75-1.1, *et seq.*, and awarding Implus its actual damages, treble those actual damages or punitive damages in an amount to be determined by the jury, and its reasonable attorneys' fees, together with pre- and post-judgment interest thereon at the maximum legal rate;

f.   For a trial by jury upon all claims so triable; and

g.   For such other and further relief as the Court may deem just and proper.

DATED this 18th day of December, 2015.

*/s/ Craig D. Mills*
Craig D. Mills
BUCHANAN INGERSOLL & ROONEY
50 South 16th Street, Suite 3200
Philadelphia, PA  19102
Tel:  (215) 665-8700
Fax:  (215) 665-8760
craig.mills@bipc.com
North Carolina Bar No. 18729

*Counsel for Plaintiff*